Opinion issued April 10, 2008











     





In The
Court of Appeals
For The
First District of Texas




NO. 01-05-01115-CV




DAIMLERCHRYSLER INSURANCE COMPANY, Appellant

V.

JACK APPLE, JR. and GREENSPOINT DODGE OF HOUSTON, INC.,
Appellees




On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2002-14943


 

OPINION ON REHEARING

          We issued an opinion in this case on October 25, 2007. Appellant
DaimlerChrysler Insurance Company (Daimler), moved for a rehearing. After
receiving a response from appellee, Greenspoint Dodge of Houston, Inc.
(Greenspoint), we grant rehearing, withdraw our opinion and vacate our judgment of
October 25, 2007, and issue this opinion in its stead.
          In this insurance coverage dispute, Daimler appeals from a judgment for breach
of contract that awarded Greenspoint $2,034,203.20 and attorney’s fees.


 The
judgment is the result of the trial court’s grant of partial summary judgment in favor
of Greenspoint on the grounds that Daimler breached its duty to indemnify and to
defend Greenspoint and a final judgment entered after a jury trial awarding
Greenspoint damages resulting from that breach. The trial court also awarded an
alternative judgment, applicable if the breach of contract judgment is reversed on
appeal, in favor of Greenspoint for an unfair or deceptive act or practice. In its first
through fourth issues, which pertain to the breach of contract judgment, Daimler
contends that the trial court erred by rendering partial summary judgments that
Daimler had a duty to indemnify Greenspoint under the insurance policies and that
Daimler had a duty to indemnify Greenspoint for punitive damages. In its fifth
through seventh issues, which pertain to the alternative judgment, Daimler contends
that there is no evidence of extra-contractual damages and no evidence that Daimler
engaged in a deceptive or fraudulent act.
          We conclude the trial court properly graned summary judgment in favor of
Greenspoint on Daimler’s duty to indemnify Greenspoint under the terms of the
broadened garage coverage contained in the commercial general liability policy. 
However, we reverse the judgment in favor of Greenspoint on Daimler’s duty to
indemnify Greenspoint under the terms of the umbrella policy because that policy
excluded coverage for employment-related practices. We further conclude that there
is no evidence that Greenspoint sustained extra-contractual damages. We reverse that
portion of the trial court’s judgment requiring Daimler to indemnify Greenspoint for
the $500,000 attributable to punitive damages and affirm in all other respects. BackgroundGreenspoint had insurance policies with Daimler for the period from August
1, 1998 to August 1, 1999, that were extended to October 11, 1999. The primary
policy contained a Commercial General Liability (CGL) coverage part and a garage
coverage part that was modified by an endorsement entitled “Broadened
Coverage—Garages” (“broadened garage” coverage or endorsement). The
declarations of the CGL coverage state, under a section entitled “Limits of
Insurance,” that the “Personal and Advertising Injury Limit” is $1 million. Similarly,
the broadened garage coverage declarations state, “Personal Injury and Advertising
Injury Limit of Insurance $1,000,000.” The second policy, which had a $5 million
limit for personal injury coverage, was the Commercial Umbrella Liability (Umbrella)
policy that was triggered (1) if the primary policy did not cover an occurrence, or (2)
when, as here, an occurrence under the primary policy was in excess of $1 million. 
Both policies required Daimler to defend and indemnify Greenspoint for claims for
“personal injury,” defined in both policies to include oral publication of material that
slanders or libels a person. However, the policies excluded coverage for publication
of material done by or at the direction of the insured with knowledge of its falsity. 
          Greenspoint made a claim under the policies after Noe Martinez, Greenspoint’s
inventory control manager, brought suit against Greenspoint. Martinez claimed that
James Sparks, Greenspoint’s controller, Mort Hall, the general manager, and Jamie
Mouton, the used car sales manager, made racist and defamatory remarks about
Martinez to third parties and ultimately fired him. Although Martinez was told that
his position was being eliminated, he later found out that Hall’s nephew replaced him
as the inventory control manager. Martinez filed suit in January 2000 against
Greenspoint, Sparks, Hall, Mouton, and Jack Apple, Jr., Greenspoint’s owner and
chief executive officer. A court ordered Martinez’s lawsuit to binding arbitration.
          After a hearing, the arbitration panel issued an opinion and a final award. The
arbitration panel ruled against Martinez on his claims for negligence, discrimination,
and retaliation, and in favor of Martinez on his claims for defamation and intentional
infliction of emotional distress. In its opinion, the panel found that “Martinez was
defamed.” The panel explained, “A statement is defamatory if the words tend to
injure a person’s reputation, exposing the person to public hatred, contempt, ridicule,
or financial injury.” The panel also found that the respondents orally published
statements accusing Martinez of criminal activity, which is defamatory per se. The
panel, “by way of example,” found that the following defamatory statements were
made:
•Mr. Satterfield and Mr. Holland both testified that Mr. Mouton
told them that Mr. Martinez was a “thieving spic beaner” or
“thieving Mexican”;
 
•Mr. Holland and Mr. Hinojosa both testified that Mr. Mouton told
them that the FBI was investigating Mr. Martinez;
 
•Mr. Satterfield testified that Mr. Mouton told him that Mr.
Martinez was involved in the “Mexican connection” and federal
agents were after Mr. Martinez for a murder investigation;
 
•Mr. Satterfield and Mr. Hinojosa testified that Mr. Sparks told
them that Mr. Martinez was involved in the theft of cars from
Greenspoint Dodge;
 
•Mr. Hinojosa was told by Mr. Mouton not to get involved with
Mr. Martinez and the “Mexican connection”; and
 
•Mr. Holland testified that heard [sic] Mr. Hall talked about
getting “rid of that thieving Mexican” when the context clearly
referred to Mr. Martinez.

The panel emphasized that there was other evidence of “defamation by the
Respondents,”


 and that the above “statements, and others, made by the Respondents
were plainly defamatory.” The panel also found that “Respondents acted with actual
malice at the time they communicated the defamatory statements” and that the
Respondents “actually knew their statements to be false at the time of
communication.” (Emphasis in original).
          Regarding Martinez’s claim for intentional infliction of emotional distress, the
panel noted that to prove intentional infliction of emotional distress, Martinez had to
show:
 
(1) a person acted intentionally or recklessly; (2) the conduct was
extreme and outrageous; (3) the person’s actions caused another
person’s emotional distress; and (4) the emotional distress suffered by
the other person was severe.

The panel found that “the Respondents intentionally slandered Mr. Martinez
knowing, at the time, that their accusations of criminal conduct were untrue.” The
panel said, “This case is well ‘outside the scope of an ordinary employment dispute
and into the realm of extreme and outrageous conduct.’” The panel imposed joint and
several liability on Greenspoint and the individual Respondents by considering the
factors outlined by the supreme court in GTE Southwest, Inc. v. Bruce, 998 S.W.2d
605, 611–16 (Tex. 1999).


 In its opinion, the panel stated,
In particular, we considered (and rejected) the possibility that the
individual Respondents acted out of personal animosity. We also find
that the individual Respondents were vice-principals of Greenspoint
Dodge at the time of the events. 

In a section entitled “Allocation of Liability,” the arbitration panel specifically stated
that a corporation is liable for its agents who engage in defamation if the agents are
vice-principals, and then found Greenspoint, Apple, Sparks, Hall, and Mouton jointly
and severally liable for the actual damages and assessed separate amounts for each
of them for the punitive damages. The arbitration panel awarded Martinez $994,361
in total actual damages plus $1,150,000 in punitive damages. 
          Daimler provided, under a Reservation of Rights, a defense to Greenspoint
during the arbitration proceedings. One of the issues on which Daimler reserved its
rights was the issue of whether certain employees of Greenspoint had made
defamatory statements about Martinez with knowledge of their falsity. On November
13, 2001, two days after the arbitration panel issued its final award, Daimler informed
Greenspoint and Apple that it would no longer defend them and would not indemnify
them for the award against them. Daimler interpreted the arbitration panel’s findings
as not requiring the defense or indemnification of Greenspoint due to the
determination that the arbitration panel found that statements were made with
knowledge of their falsity. However, Daimler continued to provide a defense for
Greenspoint and Apple until January 7, 2002, when the district court confirmed most
of the arbitration panel’s award. 
          The district court ordered judgment in favor of Martinez and against
Greenspoint, Sparks, and Mouton, holding them jointly and severally liable for
$994,361 in total actual damages, in accordance with the award by the panel of
arbitrators.


 Also in accordance with the arbitration panel’s award, the court ordered
punitive damages for $500,000 against Greenspoint, $50,000 against Sparks, and
$50,000 against Mouton. The court, however, vacated all of the arbitration panel’s
awards that were assessed against Apple and Hall.



          After entry of the judgment, Daimler refused to continue to defend Greenspoint
in any further proceedings. Without the assistance of Daimler, Greenspoint filed a
multimillion dollar bond to stay the judgment, defended garnishment actions, and
retained counsel to file an appeal.


 While the appeal was pending, Greenspoint
settled all of the claims against it for $1,750,000 and dismissed the appeal.
          Believing that Daimler breached its duties under the two insurance policies,
Greenspoint filed claims for breach of contract, unfair or deceptive practices or acts
in violation of former article 21.21 of the Texas Insurance Code,


 violations of the
Deceptive Trade Practices-Consumer Protection Act (“DTPA”),


 breach of the duty
to settle, negligence, and conversion. Greenspoint attached to its petition copies of
the primary policy and the Umbrella policy. Pertinent portions of these policies are
in the attached appendix. 
Partial Summary Judgment for the CGL Coverage and Umbrella Policies
          Daimler filed its motion for summary judgment, asserting that (1) Daimler has
no duty to indemnify Greenspoint under the terms of the policies that specifically
excluded coverage under these circumstances and (2) Daimler has no duty to
indemnify Greenspoint for the punitive damages award because public policy
prohibits indemnification of punitive damages.


 Daimler contended that the exclusion
regarding defamatory statements made by the insured with knowledge of their falsity
applied to Martinez’s claims. Daimler asserted that because the arbitration panel
found that Sparks, Hall, and Mouton were vice-principals of Greenspoint and also
found that Sparks, Hall, and Mouton made the defamatory remarks with knowledge
of their falsity, the knowledge must be imputed to Greenspoint, triggering the
exclusion. Daimler also asserted that the Umbrella policy contained “employment-related practices” exclusions that applied to the award for Martinez. Concerning the
punitive damages, Daimler asserted that “punitive damages are no longer insurable
as a matter of public policy.”
          Greenspoint also filed a motion for summary judgment, asserting that it was
entitled to indemnity and defense under the CGL coverage and Umbrella policy. 
Greenspoint contended that Daimler owed a duty to indemnify it “unless Greenspoint
itself made or directed the defamatory statements.” Greenspoint contended that there
are different legal tests for when a corporation may be held liable for the acts of its
employees, which depend on whether tort law or contract law is used to interpret the
terms of the insurance policy. Because the CGL coverage and Umbrella policy do not
specify which test is to be used, Greenspoint asserted that the policies are ambiguous
and the interpretation most favorable to the insured must be adopted. See Puckett v.
U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984).
          In response to Daimler’s contention that the Umbrella policy contained
“employment-related practices” exclusions that applied to the award for Martinez,
Greenspoint relied on the terms in the Umbrella policy stating that coverage is
excluded for personal injury “arising out of your employment practices including
wrongful dismissal or wrongful termination . . . .” Greenspoint said “defamation”
was not specifically listed as an employment related practice.
          The district court considered the opposing motions for summary judgment and
held as follows:
With respect to Greenspoint, the court holds that Daimler Chrysler had
a duty to defend Greenspoint and that a fact issue exists as to whether
an appeal was reasonable. If the appeal was reasonable, then Daimler
Chrysler owes the fees for appeal. The court also holds that Daimler
Chrysler had a duty to indemnify Greenspoint and breached that duty by
not paying the arbitration award/ [sic] and or the settlement. Fact issues
exist as to the reasonableness of the settlement and of the attorneys fees. 

The Broadened Coverage–Garages Endorsement 
          After the trial court granted partial summary judgment on the CGL and
Umbrella policies, Greenspoint amended its pleadings to specifically reference the
broadened garage coverage endorsement, which provides, 
BROADENED COVERAGE–GARAGES
          This endorsement modifies insurance provided under the following:
          GARAGE COVERAGE FORM
          . . . .
Section I - Personal Injury and Advertising Injury Liability Coverage

          A. COVERAGE
 
We will pay all sums the insured legally must pay as damages because
of:
 
a.Personal Injury caused by an offense committed:
 
(1) In the conduct of your business; and 
 
(2)In the Coverage Territory during the
Policy Period.

                    . . . .

                    1. WHO IS AN INSURED
 
          The following are insureds:
 
                              (a)     You and your spouse.
 
(b)Your partners, if you are a partnership. 
None of your partners is an insured for
personal injury resulting from the
conduct of any other partnership.
 
(c) Your executive officers, directors and
stockholders but only while acting
within the scope of their duties.



 
. . . .
 
          B. EXCLUSIONS

          This insurance does not apply to:

          . . . .
 
2.Personal injury or advertising injury arising out of
oral or written publication of material, if done by or
at the direction of the insured with knowledge of its
falsity.

          . . . .

          D. ADDITIONAL DEFINITIONS
 
“Personal injury” means injury, other than bodily injury, arising out of
one or more of the following offenses:

                    . . . .
 
4.Oral or written publication of material that slanders
or libels a person or organization or disparages a
person’s or organizations goods, products or
services . . . .

Partial Summary Judgment on Broadened Garage Coverage

          Greenspoint filed a partial motion for summary judgment, asserting that
Daimler breached its duty under the Broadened Coverage-Garage Form insurance
policy by failing to defend and indemnify Greenspoint for the Martinez litigation. 
Greenspoint’s partial motion for summary judgment closely followed the grounds
asserted in the partial motion for summary judgment concerning the CGL coverage
and Umbrella policy. Greenspoint asserted that because the policy defined “insured”
as Greenspoint and its “executive officers, directors and stockholders,” only an
individual that fit into one of these classes of people could have their knowledge
imputed to Greenspoint to trigger the exclusion. Therefore, the acts of Greenspoint’s
employees Sparks, Hall and Mouton could not be imputed to Greenspoint.
          Daimler responded to that motion for summary judgment by asserting that it
had no duty to defend or indemnify Greenspoint for the Martinez litigation under the
broadened garage coverage. Daimler expressly incorporated the grounds for
summary judgment that it asserted in its motion concerning the CGL coverage and
Umbrella policy. Daimler contended that the finding by the arbitration panel that
Sparks, Hall, and Mouton were vice-principals of Greenspoint establishes that the
knowledge of those individuals should be imputed to Greenspoint and, therefore, the
exclusion concerning defamatory statements made with knowledge of their falsity
applies.


 Daimler also contended that public policy prohibits indemnifying
Greenspoint for punitive damages.


 
          Concerning the broadened garage coverage, the trial court granted the partial
summary judgment, holding that Daimler “had a duty to defend Greenspoint” and
“had a duty to indemnify Greenspoint and breached that duty by not paying the
arbitration award and or the settlement.” 
          The trial court held a jury trial to settle the remaining issues in the case. The
court instructed the jury that it had already determined that Daimler failed to comply
with its contract with Apple and Greenspoint when it failed to pay the judgment in
the arbitration lawsuit. In accordance with the jury’s verdict, the trial court, in its
final judgment, ordered that Greenspoint “shall recover damages on its insurance
coverage claim of $1,654,195


 and prejudgment interest in the amount of
$380,008.20” from Daimler. The trial court also included awards for post judgment
interest, $340,000 in attorney’s fees on its coverage claim, and attorney’s fees for
subsequent appeals.
          The jury also determined that Daimler engaged in unfair or deceptive acts or
practices that caused damage to Greenspoint. In its final judgment, the trial court
provided an alternative judgment pertaining to the extra-contractual claim. The court
ordered,
In the alternative, if Plaintiffs’ insurance coverage claim is reversed on
appeal for any reason and only in that event, Plaintiff Greenspoint
Dodge of Houston, Inc. shall recover damages on its Art. 21.21 (now
Chapter 541 of the Texas Insurance Code) claim of $1,580,695 . . . .

In the alternative judgment, the trial court also ordered prejudgment interest, post
judgment interest, court costs, $385,000 in trial attorney’s fees, plus appellate fees in
specified contingent amounts.
 
Daimler’s Duty to Indemnify
A. Duty to Indemnify under the Knowledge-of-Falsity Exclusion
          Within issues one and three, Daimler contends that the trial court erred by
granting Greenspoint’s motion for summary judgment concerning Daimler’s duty to
indemnify Greenspoint and by denying Daimler’s cross-motion for summary
judgment concerning the duty to indemnify under the CGL coverage and the
Umbrella policy because of the knowledge-of-falsity exclusion. In issue two,
Daimler contends that the trial court erred by granting Greenspoint’s partial motion
for summary judgment on the duty to indemnify under the broadened garage coverage
because it contained the same exclusion. Daimler states, “All three insuring
agreements under which Greenspoint sought coverage for the arbitration award
exclude coverage for claims resulting from acts of defamation when the statements
were known to be false when made.” Daimler says that the findings of the arbitration
panel establish that the conduct of the individual Respondents is the conduct of
Greenspoint.


 Daimler contends that the policies exclude coverage for the damages
awarded to Martinez because the policy specifically excludes from coverage any
defamatory statements that were known to be false when made. The arbitration panel
found that defamatory statements were known to be false when made by Sparks, Hall,
and Mouton and that Sparks, Hall, and Mouton were “vice-principals” of the
corporation. Daimler asserts that because the acts of “vice-principals” are the acts of
the corporation, the insurance policy does not provide coverage as it excludes
coverage for statements made by the corporation that were known to be false when
made. 
          Greenspoint responds that the description of who is the insured in the insurance
policies should control. Greenspoint contends that the term “vice-principal . . . does
not . . . fit with the language used throughout the policy (including terms such as
employee, executive officer, director, etc.).” Explaining why the term “vice-principal” is not controlling here, Greenspoint states that the term is used commonly
in tort law, but “the term has no necessary connection to the terms that are used in the
policy when defining who is an insured.” For instance, says Greenspoint, “a person
might be a vice-principal but not be an executive officer or director.” The motion for
summary judgment states that “director” has a well-understood and specific meaning
when used in the context of organizations and when itemized along with “officers”
and “shareholders.” Greenspoint contends that the arbitration panel’s determination
that Sparks, Hall, and Mouton were vice-principals of the corporation is insufficient
to make any of them a director, executive officer, or stockholder of the corporation,
which are the terms used by the insurance policy for people who are “the insured.” 
Greenspoint states that tort liability is assessed to advance the policy objectives of
compensating victims and deterring certain types of conduct, but, in contrast, contract
interpretation is based on a very different policy objective of giving effect to the
agreement of the parties to the contract.
B. Summary Judgment Standard of Review
          We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). When both sides move for summary judgment and
the trial court grants one motion and denies the other, we review the summary
judgment evidence presented by both sides and determine all questions presented. 
Comm’rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); Cigna Ins. Co. v.
Rubalcada, 960 S.W.2d 408, 411–12 (Tex. App.—Houston [1st Dist.] 1998, no pet.). 
We render such judgment as the trial court should have rendered. Agan, 940 S.W.2d
at 81; Rubalcada, 960 S.W.2d at 412. When, as here, a summary judgment does not
specify the grounds on which it was granted, we will affirm the judgment if any one
of the theories advanced in the motion is meritorious. Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 157 (Tex. 2004).
          Summary judgment is proper only when a movant establishes that there is no
genuine issue of material fact and that the movant is entitled to judgment as a matter
of law. Tex. R. Civ. P. 166a(c). A motion must state the specific grounds relied upon
for summary judgment. Id. In reviewing a summary judgment, we must indulge
every reasonable inference in favor of the nonmovant, take all evidence favorable to
the nonmovant as true, and resolve any doubts in favor of the nonmovant. Valence
Operating Co., 164 S.W.3d at 661. 
C. Law Concerning Interpretation of Insurance Policies
          The plain language of an insurance policy, like that of any other contract, must
be given effect when the parties’ intent may be discerned from that plain language. 
See Utica Nat’l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004). 
If the policy language has only one reasonable interpretation, then it is not
ambiguous, and we construe it as a matter of law. Fiess v. State Farm Lloyds, 202
S.W.3d 744, 746 (Tex. 2006); Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154,
157 (Tex. 2003). If the contract is susceptible of two or more reasonable
interpretations, then it is ambiguous and we must resolve the uncertainty by adopting
a construction that favors the insured as long as that construction is not unreasonable. 
Fiess, 202 S.W.3d at 746 (citing Nat’l Union Fire Ins. Co. v. Hudson Energy Co., 811
S.W.2d 552, 555 (Tex. 1991)). “When interpreting an insurance contract, we ‘must
adopt the construction of an exclusionary clause urged by the insured as long as that
construction is not unreasonable, even if the construction urged by the insurer appears
to be more reasonable or a more accurate reflection of the parties’ intent.’” Evanston
Ins. Co. v. ATOFINA Petrochems., Inc., 51 Tex. Sup. Ct. J. 460, 2008 WL 400394,
at *5 (Tex. Feb. 15, 2008) (quoting Nat’l Union Fire Ins. Co., 811 S.W.2d at 555). 
“‘Exceptions or limitations on liability are strictly construed against the insurer and
in favor of the insured,’ and ‘[a]n intent to exclude coverage must be expressed in
clear and unambiguous language.’” Id. (quoting Nat’l Union Fire Ins. Co., 811
S.W.2d at 555).
D. Law Pertaining to Duty to Indemnify
          To determine whether there is a duty to indemnify an insured, courts must look
to the facts actually established in the underlying suit.


 GuideOne Elite Ins. Co. v.
Fielder Road Baptist Church, 197 S.W.3d 305, 310 (Tex. 2006). Here, the “facts
actually established” were determined in the arbitration of Martinez’s claims. The
arbitration panel found that Sparks, Hall, and Mouton “actually knew their statements
to be false at the time of communication.” (Emphasis in original). Further, the panel
specifically stated in its opinion that Sparks, Hall, and Mouton “were vice-principals
of Greenspoint Dodge at the time of the events” underlying Martinez’s claims. We
must determine, therefore, how the characterization of Sparks, Hall, and Mouton as
“vice-principals” of Greenspoint affects the determination of whether the policies
cover Greenspoint for the Martinez litigation.
E. Law Pertaining to Vice-Principals of Corporation
          A person’s “status as a vice-principal of the corporation is sufficient to impute
liability to [the corporation].” GTE Sw., 998 S.W.2d at 618. Corporations can act
only through their agents. Id. A vice-principal “represents the corporation in its
corporate capacity, and includes persons who have authority to employ, direct, and
discharge servants of the master, and those to whom a master has confided the
management of the whole or a department or division of his business.” Id. The
Supreme Court of Texas has explained, 
A ‘vice-principal’ encompasses four classes of corporate agents: (a) Corporate officers; (b) those who have authority to employ, direct,
and discharge servants of the master; (c) those engaged in the
performance of nondelegable or absolute duties of the master; and (d)
those to whom a master has confided the management of the whole or
a department or division of his business.

Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 391 (Tex. 1997). Courts use the
“vice-principal” doctrine to “distinguish between the acts of ‘the corporation itself’
and ‘that of a mere servant or employee.’” Id. (quoting Fort Worth Elevators Co. v.
Russell, 70 S.W.2d 397, 406 (Tex. 1934), disapproved in part on other grounds by
Wright v. Gifford-Hill & Co., 725 S.W.2d 712, 714 (Tex. 1987)). Acts of a “mere
servant or employee” are the basis for corporate liability based on the doctrine of
respondeat superior. Fort Worth Elevators Co., 70 S.W.2d at 406. “The liability of
the master for the negligent acts of his vice principal is placed upon very different
grounds, namely, that the negligent acts of the vice principal are the very acts of the
corporation itself.” Id. (emphasis added); see also GTE Sw., Inc., 998 S.W.2d at 618. 
In GTE, the court imposed liability on a corporation for a manager’s intentional
infliction of emotional distress on other employees when the jury found that the
manager was a vice-principal of the corporation. See GTE Sw., Inc., 998 S.W.2d at
618.
F. Application of Term of Vice-Principal to the Insurance Policies 
          Here, the insurance policies exclude from coverage “publication of material,
if done by or at the direction of the insured with knowledge of its falsity,” as stated
in the CGL policy and broadened garage endorsement, and defamatory statements
“done at the direction of you with knowledge of its falsity,” as stated in the Umbrella
policy. Therefore, under the exclusionary clause, if “the insured” made or directed
the defamatory statements with knowledge of their falsity, the policies do not provide
coverage.
          The broadened garage coverage specifically defines “the insured” as
Greenspoint, and its “executive officers,” “directors,” and “stockholders,” “while
acting within the scope of their duties.” Sparks was Greenspoint’s controller; Hall
was its general manager; and Mouton was its used car sales manager. None of them
were Greenspoint’s executive officers, directors, or shareholders. Thus, whether the
exclusion applies comes down to whether Greenspoint itself made the defamatory
statements with knowledge of their falsity.
          Under tort law, Greenspoint itself made the defamatory statements because the
arbitration panel found that Sparks, Hall, and Mouton were vice-principals of
Greenspoint


 at the time of the events and the acts of vice-principals are the acts of
the corporation itself. See Fort Worth Elevators Co., 70 S.W.2d at 406 (“the
negligent acts of the vice principal are the very acts of the corporation itself”). 
Greenspoint is therefore liable for the torts committed by its vice-principals. The
issue here, however, is not whether Greenspoint is liable for the torts committed by
its vice-principals. That issue was resolved by the arbitration panel. Rather, we must
determine whether under the terms used by this insurance policy, the acts committed
by the vice-principals are the very acts of the “organization,” as that term was used 
by the parties to the insurance policy. 
          Nothing in the policy specifies that the knowledge of vice-principals will be
considered the knowledge of Greenspoint for determining whether the exclusion
concerning defamatory statements made with knowledge of their falsity applies. The
people described in the policy as “the insured” in addition to Greenspoint are the
“executive officers, directors and stockholders but only while acting within the scope
of their duties.” These are more narrowly defined than the broader term vice-principal, which includes anyone with “authority to employ, direct, and discharge
servants of the master, and those to whom a master has confided the management of
the whole or a department or division of his business.” See GTE Sw., 998 S.W.2d at
618.
          The broadened garage coverage policy describes who is insured as
Greenspoint, Apple and his wife, in that it refers to “You and your spouse”; and
Greenspoint’s “executive officers, directors and stockholders.” Greenspoint is the
insured that seeks indemnification for the judgment against it. Thus, unless an
exception excludes coverage, Greenspoint is entitled to indemnification for the
judgment. Under the terms of the policy, Greenspoint is Apple, the officers, the
directors and the shareholders, and it does not include those people also included in
the definition of vice-principals, such as people who have authority to hire, fire and
direct employees; people who perform nondelegable or absolute duties; or people in
management positions over the entire corporation or a department or division of the
corporation. Put simply, under tort law Greenspoint is responsible for the actions of
certain people in supervisory positions because their actions are determined to be the
actions of the corporation, and liability is imposed even though the supervisors are
not officers, directors or shareholders of the corporation. But the policy excludes
from coverage only a false statement by Greenspoint, as it is defined under the policy,
as officers, directors or shareholders of the corporation. We conclude that the terms
of the policy itself control the definition of which people make up the corporation, for
purposes of the insurance coverage. See Grimes Constr., Inc. v. Great Am. Lloyds
Ins. Co., 51 Tex. Sup. Ct. J. 545, 2008 WL 542470 at *1 (Tex. Feb. 29, 2008)
(“[L]abels of tort or contract could not override the language of the insuring
agreement”) (citing Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 13
(Tex. 2007));


 Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 823 (Tex. 1997)
(“when terms are defined in an insurance policy, those definitions control”).
          Although tort law imputed liability onto Greenspoint due to the actions of the
vice-principals under concepts for establishing liability by a corporation, the policy’s
reference to knowledge by the insured means that Greenspoint itself had to actually
have the knowledge. No evidence shows that Greenspoint itself knew about the
defamation, and nothing in the policy language requires that Greenspoint should be
treated as having the knowledge of Sparks, Hall, or Mouton. We hold that the
construction of the exclusionary clause offered by Greenspoint, the insured, is not
unreasonable, that the insurance policy does not express in clear and unambiguous
language an intent to apply the exclusionary clause to the conduct of vice-principals,
as that term is used in tort law, and we must therefore strictly construe the limitation
of liability against Daimler, the insurer, and in favor of Greenspoint. See Evanston
Ins. Co., 51 Tex. Sup. Ct. J. 460, 2008 WL 400394, at *5.



          The trial court, therefore, did not err by implicitly rejecting Daimler’s theory
that Greenspoint itself made the statements and thus could not recover under any of
the insurance policies.
G. The Altivia Decision
          Daimler cites to Altivia Corporation v. Greenwich Insurance Co. for the
proposition that there is no duty to defend under the knowledge-of-falsity exclusion
when the petition alleged that defamatory statements were made by corporation’s
agents and were false and malicious. See 161 S.W.3d 52, 54 (Tex. App.—Houston
[14th Dist.] 2004, no pet.). In Altivia, the court held that an insurance company had
no duty to defend a corporation when the corporation was sued for wrongful
termination and defamation. Id. at 54–55. Specifically, Altivia was sued by a former
employee for responses to inquiries by other employers regarding the discharged
employee, wherein Altivia falsely reported that the discharged employee, a trucker,
had been involved in two accidents while employed by Altivia. Id. at 54. Altivia’s
insurance policy excluded coverage for “such a personal injury if done by the insured
with knowledge of its falsity” and a “personal injury arising out of any termination
of a person’s employment or ‘employment related’ acts or omissions, such as
defamation (the ‘ERP exclusion’).” Id. The court, applying the “eight-corners rule,”
stated,
Hidrogo’s petition does not specify the context of the alleged statements
or the persons by whom, time frame in which, or purpose for which the
statements were allegedly made. To the extent they were alleged to be
made in response to routine employment inquiries to Altivia by other
prospective employers, they would be employment related acts subject
to the ERP exclusion. Conversely, to the extent the statements were
otherwise alleged to be made by Altivia’s authorized agents, such as to
subject Altivia to liability, and were false and malicious, as Hidrogo’s
petition alleges, they would have allegedly been made by Altivia with
knowledge of their falsity and thus also outside the scope of coverage.
Id. at 54. The portion of the opinion analogous to the situation before us refers to
“statements . . . alleged to be made by Altivia’s authorized agents, such as to subject
Altivia to liability.” See id. The court does not indicate whether the insurance policy
in Altivia defines who is an “authorized agent” for the purpose of insurance, nor does
it speculate who is an “authorized agent.” Since the very question before us is what
constitutes an act of Greenspoint as defined by the insurance policy, Altivia is not
instructive.
H. Duty to Indemnify under the Employment-Related Practices Exclusion
          Within its first and third issues, Daimler also contends that the trial court erred
by granting Greenspoint’s motion for partial summary judgment on the duty to
indemnify because the policies contain an employment-related practices exclusion.
          1. The Broadened Garage Coverage and CGL Coverage
          Concerning Daimler’s challenge to the broadened garage coverage, the record
supports Greenspoint’s response that the broadened garage endorsement does not
contain the employment-related practices exclusion. We hold that the trial court did
not err by implicitly rejecting Daimler’s assertion that the employment-related
practices exclusion precluded coverage under the broadened garage coverage of the
primary policy. 
          An appellate challenge on the grounds of the employment-related practices
exclusion is made by Daimler to the CGL coverage.


 This challenge, however, was
not a ground in Daimler’s motion for summary judgment or in response to
Greenspoint’s motion for summary judgment before the trial court ruled on those
motions.


 When the trial court ruled in favor of Greenspoint in the motion for
summary judgment in June 2003 by holding that Daimler breached its duty to
indemnify Greenspoint under the CGL coverage and Umbrella policy, Greenspoint
did not assert that an employment-related practices exclusion was a reason to hold
that there was no insurance coverage for Greenspoint under the CGL coverage. The
first time that Daimler claimed that there was no insurance coverage on the ground
that the employment-related practices exclusion of the CGL coverage was in its
“Supplemental Briefing and Motions for Clarification and Reconsideration in support
of its Motion for Summary Judgment against Plaintiffs Greenspoint Dodge and Jack
Apple, Jr.,” which was filed after the trial court granted partial summary judgment for
Greenspoint and denied Daimler’s motion. We cannot conclude that the trial court
erred by rendering summary judgment in favor of Greenspoint when Daimler did not 
expressly present in its summary judgment response the grounds that it now asserts
on appeal. See Tex. R. Civ. P. 166a(c) (“Issues not expressly presented to the trial
court by written motion, answer or other response shall not be considered on appeal
as grounds for reversal.”); Rayl v. Borger Econ. Dev. Corp., 963 S.W.2d 109, 114
(Tex. App.—Amarillo 1998, no pet.) (holding that party may not appeal summary
judgment in favor of opponent when grounds opposing summary judgment asserted
on appeal were not raised before trial court).
          We conclude the broadened garage coverage is not limited by any employment-related practices exclusion and that the CGL coverage was not challenged on those
grounds. Further, as discussed above, the knowledge-of-falsity exclusion does not
apply to Greenspoint under the facts of this case. We hold that the trial court properly
rendered summary judgment in favor of Greenspoint under the broadened garage
coverage of the primary policy, which had a policy limit of $1 million dollars. 
However, because the judgment exceeds $1 million dollars, we must next determine
whether the $5 million dollar Umbrella policy provided further coverage for
Greenspoint.
          2. The Umbrella Policy
          On appeal, Daimler challenges the Umbrella Policy on the grounds that it
excluded coverage for employment practices. The Umbrella policy excludes
coverage for “personal injury” or “advertising injury”:
(5)To any officer, director or employee of yours arising out of or in
the course of that person’s employment by you;
 
(6)To any current or former officer, director or employee of yours or
any applicant for employment by you arising out of your
employment practices including wrongful dismissal or wrongful
termination by any officer, director or employee.

“Personal injury” is defined by the Umbrella policy as “injury, other than ‘bodily
injury’, arising out of . . . [o]ral or written publication of material that slanders or
libels a person or organization or disparages a person’s or organization’s goods,
products or services.” The term “arising out of” is very broad, requiring only a “but
for” causal connection, not direct or proximate causation requirement. Utica Nat’l
Ins. Co. of Tex., 141 S.W.3d at 203. Here, it is undisputed that but for his
employment at Greenspoint, Martinez would not have been subjected to the conduct
of his superiors, Sparks, Hall, and Mouton, who were motivated to fire Martinez to
be able to hire Hall’s nephew. We hold that the employment-related practices
exclusion to the Umbrella policy excludes personal injury to Martinez that arises out
of or in the course of Martinez’s employment by Greenspoint. Thus, Greenspoint
could not recover under the $5 million dollar Umbrella policy, and was limited to the
$1 million dollar broadened garage coverage of the primary policy.
          We overrule Daimler’s issues one, two, and three concerning the breach of its
duty to indemnify Greenspoint, in part, and sustain regarding Daimler’s duty to
indemnify under the Umbrella policy. Because we have determined that the portion
of the award attributable to punitive damages is not covered by any of the policies,
we need not address Daimler’s fourth issue, in which it asserts that, as a matter of
law, an insurance company may not indemnify an insured for an award of exemplary
damages.
Extra-Contractual Claims
          In its fifth issue, Daimler contends that the trial court erred by denying its
motion for directed verdict because there is no evidence that Greenspoint suffered
extra-contractual damages. In its sixth issue, Daimler contends that “there is no
evidence to support the jury’s findings that Greenspoint suffered any extra contractual
damages.”
          The trial court rendered judgment in favor of Greenspoint on its extra-contractual claims. Specifically, the trial court ordered that
In the alternative, if Plaintiffs’ insurance coverage claim is reversed on
appeal for any reason and only in that event, Plaintiff Greenspoint
Dodge of Houston, Inc. shall recover damages on its Art. 21.21 (now
Chapter 541 of the Texas Insurance Code) claim of $1,580,695 . . . .
Having reversed in part the judgment for Greenspoint on the coverage claims, we now
address Daimler’s issues concerning the extra-contractual claims.
          Directed verdicts are subject to the same standards of review as a legal
sufficiency, or no-evidence, challenge. City of Keller v. Wilson, 168 S.W.3d 802, 823
(Tex. 2005). “The final test for legal sufficiency must always be whether the
evidence at trial would enable reasonable and fair-minded people to reach the verdict
under review.” Id. at 827. “[L]egal-sufficiency review in the proper light must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not.” Id. If the evidence “would enable reasonable and
fair-minded people to differ in their conclusions, then jurors must be allowed to do
so.” Id. at 822. “A reviewing court cannot substitute its judgment for that of the
trier-of-fact, so long as the evidence falls within this zone of reasonable
disagreement.” Id. Although the reviewing court must “consider evidence in the
light most favorable to the verdict, and indulge every reasonable inference that would
support it[,] . . . if the evidence allows of only one inference, neither jurors nor the
reviewing court may disregard it.” Id. 
          Damages in an extra-contractual claim must be different than simply claiming
the benefits of the policy, because these damages are recoverable in a breach of
contract claim. See Provident Am. Ins. Co. v. Castaneda, 988 S.W.2d 189, 198–99
(Tex. 1998) (holding that insurer’s allegedly deceptive acts or practices “did not
cause any injury independent of the denial of policy benefits”); United Servs. Auto.
Ass’n v. Gordon, 103 S.W.3d 436, 442 (Tex. App.—San Antonio 2002, no pet.) (“An
insured is not entitled to recover extra-contractual damages unless the complained of
actions or omissions cause injury independent of the injury resulting from a wrongful
denial of policy benefits.”). 
          In its brief, Greenspoint responds to Daimler’s fifth and sixth issues by
explaining its theory of Daimler’s liability as follows: “A reasonably prudent
insurance carrier in DaimlerChrysler’s position would have recognized its liability to
pay damages on behalf of the Greenspoint Dodge and Apple in an amount within the
policy limits.” (Emphasis added). Greenspoint’s also states, “[Daimler’s] refusal to
settle this claim compelled Apple to retain the services of counsel and to institute this
suit to recover amounts due under the Primary Policy and the Umbrella Policy by
failing to offer to pay Greenspoint Dodge the policy benefits to which it is entitled.” 
(Emphasis added.) At trial, Greenspoint, during closing argument, told the jury that
the answer for damages on the extra-contractual claims and the breach of contract “is
going to be the same.” The amount of damages Greenspoint asked the jury to assess
for the extra-contractual claims was the amount awarded to Martinez after a judgment
was signed in favor of Martinez. Indemnification for Martinez’s claim is the portion
of the contract that Greenspoint claims Daimler breached. Greenspoint did not seek
damages independent of the policy benefits sought under its breach of contract claim
and it sought only to obtain the benefits of the policy it had with Daimler. Having
upheld the breach of contract claim in the amount of the policy limits, we hold that
Greenspoint may not recover extra-contractual damages beyond the policy limits
because the damages claimed by Greenspoint were only those damages due to
Greenspoint under the insurance policies it had with Daimler. See Provident Am. Ins.
Co., 988 S.W.2d at 198–99; United Servs. Auto. Ass’n, 103 S.W.3d at 442. 
          We sustain Daimler’s fifth and sixth issues.


Conclusion
          We reverse that portion of the trial court’s judgment awarding damages to
Greenspoint and that portion awarding Greenspoint a recovery on its extra-contractual claims. We remand the cause to the trial court for the limited purpose of
reducing the damages awarded to Greenspoint by $500,000, which is over the
coverage limits of the applicable policy, and to recalculate the amount of pre-judgment interest. This is a limited remand. See Hudson v. Wakefield, 711 S.W.2d
628, 630 (Tex. 1986); Hong Kong Dev., Inc. v. Nguyen, 229 S.W.3d 415, 439 (Tex.
App.—Houston [1st Dist.] 2007, no pet.). We affirm the judgment of the trial court
in all other respects.


 
                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Taft, Jennings, and Alcala.

APPENDIX

           Attached to the petition was the Commercial General Liability (CGL) insurance
policy, which states:

          SECTION 1 - COVERAGES
 
. . . .

          COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY
 
1. Insuring Agreement.
 
a. We will pay those sums that the insured becomes legally
obligated to pay as damages because of “personal injury” or
“advertising injury” to which this insurance applies. We will
have the right and duty to defend any “suit” seeking those
damages. We may at our discretion investigate any “occurrence”
or offense and settle any claim or “suit” that may result. . . .

                    b. This insurance applies to:
 
(1)“Personal injury” caused by an offense arising
out of your business, excluding advertising,
publishing, broadcasting, or telecasting done
by you or for you;

                    . . . .
 
2. Exclusions.
 
 This insurance does not apply to:
 
a. “Personal injury” or “advertising injury”:
 
(1)Arising out of oral or written publication of
material, if done by or at the direction of the
insured with knowledge of its falsity;
 
. . . .
 
SECTION II - WHO IS AN INSURED

          1. If you are designated in the Declarations as:
 
a.An individual, you and your spouse are insured, but only
with respect to the conduct of a business of which you are
the sole owner.
 
b. A partnership or joint venture, you are an insured. . . . 
 
c.An organization other than a partnership or joint
venture, you are an insured. Your “executive
officers” and directors are insureds, but only with
respect to their duties as your officers or directors. 
Your stockholders are also insured, but only with
respect to their liability as stockholders.

          2. Each of the following is also an insured:
 
a.Your “employees” other than your “executive
officers,” but only for acts within the scope of their
employment by you or while performing duties
related to the conduct of your business. However,
no “employee” is an insured for:
 
                              (1)     “Bodily injury”or “personal injury”:
 
(a)To you, to your partners or
members (if you are a
partnership or joint venture), or
to a co-“employee” while in the
course of his or her employment
duties related to the conduct of
your business;
 
(b)To the spouse, child, parent,
brother or sister of that co-“employee” as a consequence of
paragraph (1) (a) above; 
                                   
(c)Arising out of his or her
providing or failing to provide 
professional health care services. 
                              . . . .

          SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

          . . . .

          7. Separation of Insureds.
 
Except with respect to the Limits of Insurance, and any rights or duties
specifically assigned in this Coverage Part to the first Named Insured, this
insurance applies:
 
a.As if each Named Insured were the only Named Insured;
and
 
b.Separately to each insured against whom claim is made or
“suit” is brought.
 
. . . .

          SECTION V - DEFINITIONS
 
1.“Advertising injury” means injury arising out of one or more of
the following offenses 
 
(a.)Oral or written publication of material that slanders
or libels a person or organization or disparages a
person’s or organization’s goods, products or
services;
          . . . . 
 
6.“Executive officer” means a person holding any of the officer
positions created by your charter, constitution, by-laws or any
other similar governing document.

          . . . .
 
          13.     “Personal injury” means injury, other than “bodily injury,” arising out
of one or more of the following offenses: 
 
. . . .
 
d. Oral or written publication of material that slanders or
libels a person or organization or disparages a person’s or
organization’s goods, products, or services[.]
 
The CGL policy has an endorsement that is entitled “TEXAS CHANGES -
EMPLOYMENT RELATED PRACTICES EXCLUSION.” That endorsement 
states,

          This Insurance does not apply to:

          “Personal injury” to:
 
                    (1)      A person arising out of any:
 
(a) Refusal to employ that person;
 
(b)Termination of that person’s
employment; or
 
(c)Employment-related practices, policies,
acts or omissions, such as coercion,
demotion, evaluation, reassignment,
discipline, defamation, harassment,
humiliation or discrimination directed
at that person . . . . 

          Also attached to the petition was the Commercial Umbrella Liability Policy
that stated, 
 
. . . .
 
Coverage B -Umbrella Liability 
 
If no “underlying insurance” applies, we will pay to the Insured the
“ultimate net loss” in excess of the “retained limit” because of:

          . . . .
 
“Personal injury” or “advertising injury” which occurs within the
“coverage territory” and during the “period of coverage” to which this
insurance applies. No other obligation or liability to pay sums or
perform acts or services is covered unless explicitly provided for
elsewhere in this policy.

          . . . .

          SECTION II - EXCLUSIONS

          This insurance does not apply to:

          . . . .
 
h.Any dishonest, malicious, fraudulent, criminal or intentional act
or omission; however, this exclusion does not apply to you if
such act or omission was committed by your employee (other
than a partner, director, executive officer or stockholder) without
your direction or knowledge. [Emphasis in policy]. 

          . . . .
 
          u.       “Personal injury” or “advertising injury”:
 
(1) Arising out of oral or written publication of material,
if done at the direction of you with knowledge of its
falsity;

                     . . . .
 
(5)To any officer, director or employee of yours arising
out of or in the course of that person’s employment
by you;
 
(6)To any current or former officer, director or
employee of yours or any applicant for employment
by you arising out of your employment practices
including wrongful dismissal or wrongful
termination by any officer, director or employee.

          SECTION III - WHO IS AN INSURED

          [1] If you are designated in the Declarations as: 
 
(a.)An individual, you and your spouse are insureds, but
only with respect to the conduct of a business of
which you are the sole owner. 
 
(b.)A partnership or joint venture, you are an insured. 
Your members, your partners, and their spouses are
also insureds, but only with respect to the conduct of
your business. 
 
(c.)An organization other than a partnership or joint
venture, you are an insured. Your executive officers
and directors are insureds, but only with respect to
their duties as your officers and directors. . . .

          . . . .
 
          [2] Each of the following is also an insured: 
 
(a.)Your employees, other than your executive officers,
but only for acts within the scope of their
employment by you. However, none of these
employees is insured for: 
 
(1)“Bodily injury” or personal injury” to
you or to a co-employee while in the
course of his or her employment; 
 
. . . . 
 
SECTION VI - DEFINITIONS
 
. . . . 
 
15. “Personal injury” means injury, other than “bodily injury”, arising
out of one or more of the following “offenses”,
 
. . . .
 
d. Oral or written publication of material that slanders
or libels a person or organization or disparages a
person’s or organization’s goods, products or
services; . . . .